**In re GREAT NORTHERN PAPER, INC., Debtor.**

**Unsecured Creditors Committee, Plaintiff,**

**v.**

**Belgravia Paper Company, Inc., Defendant.**

**Bankruptcy No. 03–10048–LHK. Misc.No. 03–MISC–17–B–H.**

United States District Court, D. Maine.

March 17, 2003.

---

17. After the September 28 filing, the landlord allowed the October, November, and December rents to go unpaid without seeking an order, prior to rejection, to enforce compliance with § 365(d)(3). The landlord waited until June 2001 to file a motion seeking payment of its rent for November and December.

**498**

Daniel W. Sklar, Peabody & Brown, Manchester, NH, Jay S. Geller, Law Office of Jay S. Geller, Portland, ME, Victor G. Milione, Boston, MA, for Unsecured Creditors Committee, Plaintiff.

Michael A. Fagone, Robert J. Keach, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Belgravia Paper Company, Inc., Defendant.

Daniel Bleck, Mintz Levin Cohn Ferris Glovsky & Popeo P.C., Boston, MA, David Bertoni, Martin I. Eisenstein, Brann & Isaacson, Lewiston, ME, Harold B. Murphy, Hanify & King, Boston, MA, for Great Northern Paper, Inc., Debtor-in-Possession.

## ORDER ON EXPEDITED MOTION OF THE UNSECURED CREDITOR'S COMMITTEE FOR LEAVE TO FILE AN APPEAL

HORNBY, District Judge.

The Unsecured Creditor's Committee (the "Committee") has filed a motion for leave to file an appeal of the Bankruptcy Court's order approving certain procedures concerning the sale of assets of Great Northern Paper, Inc. In particular, the Committee challenges the $5 million break-up fee to the "stalking horse bidder," Belgravia Paper Company, Inc. ("Belgravia"), and the payment of Belgravia's expenses under certain circumstances. Exped. Mot. at 2 & n.1 (Docket No. 3). Belgravia has objected to the motion. I received the motion, the responses and related papers on Friday, March 14, 2003. The deadline for submitting bids under the Bankruptcy Court's Order is 4:00 p.m. (Eastern Standard Time), Tuesday, March 18, 2003. Bankr.Order (02/18/03) at 2 (Docket No. 2). If there are other bids, an auction will be held in the Bankruptcy Court on March 21, 2003 at 9:00 a.m. The sale hearing will be conducted concurrently on March 21, 2003. *Id.*

The motion makes two major arguments challenging the Bankruptcy Court's Order: first, that the procedure will deter other

bidders from participating [1]; and second, that if another bidder does participate and wins, the payments to Belgravia will be a "windfall to Belgravia," instead of going to creditors. Exped. Mot. at 2.

■ Because the bid deadline is March 18 at 4:00 p.m., it is necessary for me to make an expedited ruling so as not to moot the motion by the mere passage of time. I **DENY** the motion for leave to file an interlocutory appeal at this time for the following reasons. The Committee recognizes that two of the criteria for granting an interlocutory appeal are whether (1) refusal would result in wasted litigation and expense; and (2) an immediate appeal may materially advance the ultimate termination of the litigation. *See, e.g., HSBC v. Handel (In re Handel)*, 240 B.R. 798, 800 (1st Cir. BAP 1999); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 652 (1st Cir. BAP 1998). Here, a ruling before the bidding process is completed, would have the opposite result. We do not know now and will not know until the bid deadline has passed whether other bidders have been deterred. To grant the motion for an interlocutory appeal now would have the perverse effect of disrupting the bidding process where the Bankruptcy Court has accepted the debtor-in-possession's judgment that Belgravia's stalking horse bid will actually encourage other bidding. I conclude that it is better to wait to see what develops during the bidding process, whether there is an auction, and what the

consequences are. There appear to be at least three possibilities:

*1. Other bidders appear and bid but Belgravia outbids them.* In that event there appears to be no harm to the Committee and the objections of the Committee will probably be moot.

*2. Other bidders appear and Belgravia loses and claims the $5 million break-up fee and other expenses.* Then the Committee's first argument is moot, but the second argument can still be examined on any appeal of the order approving the sale.

*3. No other bidders appear and the sale is consummated as to Belgravia.* The Committee can then appeal the order of sale and make the same arguments it is making now, but the record will be arguably clearer as to the effect of the bidding procedures.

For these reasons, I **DENY** the motion at this time, but **WITHOUT PREJUDICE** to its renewal when the record is more fully developed concerning the actual occurrence of the bid process and sale.[2]

**So ORDERED.**

1. The Committee's concern is that the $5 million break-up fee has this effect: The order of sale has placed a value on the assets for bidding purposes of $91 million and a required bidding increment of $2 million. Given the $5 million break-up fee, the first competing bid therefore must be at least $98 million, whereas without the break-up fee it could be as little as $93 million. It is important to note that the $91 million valuation is not final, but only a mechanism for measur-

ing the qualifications of the first competing bid. Ultimately the Bankruptcy Court will have to determine what is the highest bid and there may be some difficult valuation questions in that measure.

2. These same elements of prematurity apply to the Committee's concern about the payment of Belgravia's expenses under the circumstances it has enumerated in its motion.